Good morning. Good morning. May it please the Court, my name is Stephen Manning, and along with Jennifer Rotman and Jessica Boyle, I represent the petitioner, Ms. Isabel Manuel-Miguel. With my time this morning, which I would like to reserve three minutes of, I would like to cover two things. First, I would like to explain why the Court's hearing this case. The procedural posture of this case, how this case came to the Court, is tricky, but it's understanding it is critical to reach a resolution. The second issue, Ms. Manuel raises four principal claims in her petition for review, and I would like to address one of those, her principal claim, that the asylum statute, section 1158, which provides that any alien physically present in the United States, irrespective of such alien status, has a right, that that statute means that Ms. Manuel has a right to merits adjudication of her asylum application. So this is a petition seeking review of a 2007 reinstatement order, reinstating a 1993 deportation order entered in absentia. In 1992, Ms. Manuel, she was in Guatemala, her father and her grandfathers and her grandparents were murdered by the Guatemalan Civil Patrol, and she was raped. She fled the country, entered the United States. When she entered the United States, the government initiated deportation proceedings. Three months later, she filed for asylum. Three months after that, an immigration judge, unaware that she had filed for asylum, and did not adjudicate her asylum application, ordered her deported in absentia. Sixteen years later, 16 years during which she made constant, consistent contact with the government about her asylum application, the asylum office called her for an interview. Is there any dispute as to her knowledge of the deportation order? There is, there's a dispute, I don't, she was not aware of the deportation order. I don't know if the government disputes the fact that she was not aware of her deportation order. But there is a, there was a dispute related to it that I would like to address in just a moment. So 16 years later, the asylum office calls her in for an interview. During that interview, they ask her questions about her asylum application, she responds, and then one year later, the asylum office says, look, there's an issue here, there's this removal, there's this deportation order from 1993, and that's a problem. And Ms. Manuel said, well, I left the country, and so there was this dispute whether or not she had effectuated the order. So she said she left, the asylum office said, well, we're not sure about that, so ICE got involved. So ICE got involved in the case, and they took a look at it, and they said, well, yes, indeed, you did, she did leave the country in 1999, thereby effectuating the removal, the deportation order. Instead of then permitting her to proceed with the merits adjudication of her asylum claim, ICE reinstated its order, reinstated the 1993 order. And that's where we are today. So she's seeking review of that order. The government says, so Ms. Manuel is seeking asylum under 1158, Section 1158 of the Act. Now 1158 says that any alien physically present in the United States, irrespective of such a language, has a right to file for asylum. Ms. Manuel is an alien. She's physically present in the United States. And though she has the status of a reinstated alien, irrespective of that status, she has a right to file for asylum under the plain language of the statute. The government says no. The government says that the reinstatement statute, Section 1231, says that a reinstated alien may not apply for, quote, any relief under the Act. And they say that 1231 changes the meaning in 1158, that irrespective of such alien status, that an individual can seek asylum. But the government's interpretation cannot be, and the regulation to the same effect, cannot be correct for at least three reasons. So first of all- Could I just ask for clarification on that? If we accept, you know, what you're saying is true, and the Portland office said, well, we can't accept this application because, in fact, if you have a deportation order, you've got to go back to the immigration court, and before she had a reinstatement order, she could have moved to reopen those proceedings, could she not? The statute prescribes a very limited means in which an individual can reopen a- But yes or no, could she have filed a motion to reopen those proceedings in which the in absentia order had been issued? We're not trying to avoid the question, but the answer would be yes and no. She could file, but she would still need to be qualified under the statute. So a motion to reopen can only be filed in two instances. One within an individual- The 90- But it's 180 days. But, you know, she'd file an out-of-time motion for a variety of reasons. But what wasn't one of the problems here is that she did have this order, and if you've been in immigration court proceedings, your application for asylum needs to be adjudicated before an immigration judge and not through an immigration office. That's a jurisdictional- It's not a subject matter jurisdiction issue, but it's a jurisdictional issue between the agencies, between EOIR, the Executive Office of Immigration Review, and the USCIS Asylum Office. And so they have this rule saying, immigration judge, you hear cases for claims that are in proceedings. We're going to hear claims for everybody else. Once she effectuated her order, once she left in 1999, the only individual, the only agency that had jurisdiction over her claim would have been the asylum office. So the Supreme Court has- for three reasons why the government's interpretation is not correct. So when the Supreme Court is discussed, they provide guidance on what it means when there's a general statute and there's a specific statute. 1231 is a general statute. 1158 is a very specific statute. What 1158 does, unlike any other statute, unlike any other aspect of the immigration law, Congress has exhaustively prescribed who is eligible for asylum, who is ineligible for asylum. They even talk about who can get work permits, how long it takes before they have to issue a work permit. It's detailed and very specific. 1231 is very broad-based, very general. And this interpretive rule, that a general categorical rule like 1231 will not upend a specific statute, such as 1158, makes sense here because that interpretive rule is designed to prevent a statute by stealth, where 1231 could come in by stealth and upend what the Congress has really worked hard after many years to get this complicated statutory scheme in 1158. Her asylum application was on file before the in absentia deportation order? That's correct. And how long did it take the government to deal with that, in any way? 17 years. The second reason... Would you clarify then, when she files her second application in what, 2006 approximately? Did her leaving of the country drop her previous application, or is it still pending today? A departure from the United States while an application for asylum is pending does not abandon an application. It's a factor to consider when they adjudicate it. I mean, it's going to go to the well-founded fear or past persecution analysis, but there's no automatic abandonment of that application. Unlike an adjustment application, departure would abandon it, but asylum does not. But to answer my question, what's the status of that application? Is it abandoned or withdrawn because of a new application? Neither. The agency has... I would say the application is pending.  Which is quite common. Individuals will file successive applications, and then they'll all be consolidated into a single adjudication. Or the application will be treated as a new filing. But there's nothing in the record indicating which way the agency is viewing the 2006. And once now that she has a reinstatement order, would that preclude her now from moving to reopen the proceedings? That is an unsettled question at this time. She could move to reopen, and by moving to reopen, if that would then undo the subsequent order of reinstatement, is a question that the Court of Appeals have not resolved yet. So I do not know the answer. And with my remaining time, I would like to reserve. You may. May it please the Court, my name is Amy Fredrickson, and I represent the government in this matter. This is a petition for review from reinstatement proceedings. And therefore, the only question that the Court has jurisdiction over is whether the petitioner is an alien who was previously removed from the United States and is present in the United States illegally. The petitioner has already conceded all of these points. As to the asylum application, there's a couple of issues here. First is, because she was placed in proceedings in 1992, when she filed her application in 1993, the immigration judge had sole jurisdiction over that asylum application. That asylum application was abandoned when she failed to appear for her proceedings and the immigration judge ordered her removed. The immigration judge, even after the order was removed. What's your authority for that, that you abandon? What was she asked to appear for? She was placed in removal proceedings. We don't have the transcript of the proceedings before the immigration judge, so it's kind of difficult to determine whether the hearing that she failed to appear for was for a hearing on the merits or for another asylum hearing. Well, it might make a difference, might it not? I mean, I find it hard for the government to say, I don't have the transcript, but here's what happened. Well, what we do know from the record of deportable alien and that she's not challenging is that she appeared before the immigration judge in June prior to and at that hearing conceded removability. And then they scheduled another hearing for two weeks later and she failed to appear for that hearing. So by failing to appear, the immigration judge was able to enter an order of removal because she had been given the warnings about what happens when you fail to appear and she had already conceded removability. So removability was established and she had been given the warnings about what happens when you don't show up here. How do we know that? Well, that's how an immigration judge is able to enter a removal order in absentia. Well, the warnings don't do you much good if you're not there. Well, she did appear before the immigration judge previously. And we have no record of that, so we don't know what went on. Well, we have a record of that in the immigration's decision, which we do have a copy of in the administrative record, and also in the record of deportable alien. And she's not challenged either of those things and she's never filed a motion to reopen with the immigration judge challenging that removal order. So because... Does she contest whether she was told at that procedure hearing, whatever it was, that she had to appear again in two weeks? She's never raised any argument to that effect, no. She's never contested that, either in these proceedings or in a motion to reopen. And that would be, if she had not received those warnings, that would be grounds for a motion to reopen. But also we do have a copy of the notice to appear, and the notice, I guess, is in this case an order to show cause. And the order to show cause gives warnings also about what happens if you fail to appear. Because the immigration judge was the one who had the jurisdiction over the asylum application, when she filed her subsequent... That doesn't change just because she was deported. Under the regulations, the immigration judge continues to have jurisdiction even after an order of removal is entered. And the Board of Immigration Appeals has interpreted that to mean that in order to file a subsequent asylum application, the alien is required to win on a motion to reopen. And again, she's never filed a motion to reopen in this case. There's no due process violations because she's received due to the process that was due. She was put into removal proceedings, and she failed to appear at her hearing. So she abandoned those claims. Additionally, it's worth noting that the statute is quite clear that no relief is available to those who... to reinstatement proceedings. Asylum is actually a form of relief, while withholding and cap are protection and not relief. She is still eligible and entitled to apply for withholding of removal and protection under cap. Those are not forms of relief because they're not intended to be permanent solutions to removal order, where asylum is a permanent solution. Asylum permits you to eventually apply for a lawful permanent residency and... You're saying she could apply now for withholding and cap? Yes. I know, but so withholding as well? Withholding of removal and cap. Under the reinstatement provisions, there are two exceptions to the no relief that are laid out in the regulations. And one is for certain NACARA applicants, and the other is for applications of withholding of removal and protection under cap. Because... And that's because withholding of removal and cap are both mandatory forms of relief, where asylum is discretionary. There are many things that can bar asylum applications, such as filing it outside of one year after your last entry. What took the government so long to deal with her initial asylum application? It's not clear, actually, whether that, from the record, whether that was a result of her 1993 application or, more likely, the 2006 application that she filed. Because she filed that second asylum application, USCIS was looking at that application and ascertained that it did not have jurisdiction over the application. She filed in March of 93? Yes. But that, again, that claim went away because the immigration judge subsequently ordered her deported. So is there some piece of paper that would be equivalent to a docket or something else in the immigration court that would show what the status of the 1993 application was? I mean, you're saying, well, she got deported, but you could get deported and still have an application. There always was that argument about whether you could reopen and do certain things when you're out of the country, but you could still have a pending asylum application and be outside the country, and then if you got granted, then the process would move forward. But in this case, she was placed in proceedings, then she filed her asylum application, and then she was ordered removed. And because of that, that deportation order cleared up all of those issues. No, no, no. How? I know it's like waving a magic wand, but how did it do that? Is there a piece of paper that says that? Well, the immigration judge's order ordering her deported because he had sole jurisdiction over the asylum application, and her proceedings were terminated because she failed to appear. She did not receive a hearing on the merits because she did not appear for one, and that was her responsibility. And because she did not appear and because she did not file a motion to reopen, filing a motion to reopen and explaining either her reasons for failing to appear, that she did not receive notice, demonstrating that there were an exceptional circumstance or showing that there were changed country conditions that justified an untimely reopening of her asylum, an untimely motion to reopen. Any of those things would have justified a motion to reopen, and then she could have received a hearing on the merits of her asylum application. But she has not only never filed a motion to reopen, she has never argued that there were any circumstances that would justify a motion to reopen. If she didn't receive a hearing on the merits of her asylum application, but it was because she failed to appear for her immigration judge hearing. You've now told us that six times. Do you have anything else? I would just like to point out that there's a process called a reasonable fear interview under this statute, which is separate from the reinstatement proceedings. It's not part of the reinstatement process, and it does not trigger until the removal has actually been reinstated. That's under 8 CFR section 1241.8E. Those proceedings permit her to receive an interview to ascertain whether she's eligible for withholding of removal or protection under CAT. And if she is then granted withholding or protection, although she will have an outstanding removal order, until the government can demonstrate that the reason for her fear no longer exists. That's always the hazard with withholding of removal as opposed to asylum. So why wouldn't we just put this in the icebox and let things take their course? They don't have jurisdiction over the case because once she was put into removal proceedings, the immigration judge was the sole person to have jurisdiction. Does she have any criminal record? Not to our knowledge. The government announced the other day, or recently, that they were going to allow people, even people in detention, who had no outstanding criminal convictions, et cetera, but had some legitimate claim to stay here to hold off removal until the applications were dealt with. I think I know the answer to this. I think I know what your answer is going to be, but why wouldn't she be eligible? Because the immigration judge was the only one who had jurisdiction to deal with her asylum application, and she abandoned that asylum application. This is the government's program. I take it you're familiar with it? Yes. It's a matter of discretion. The government did not have to do this. They decided to. Correct? Yes. Why wouldn't they exercise their discretion here? The USCIS does not have jurisdiction over her asylum application, so there's not really anything that they can do to adjudicate it. But I thought she could go to a credible fear or other interview for withholding and cash. Yes, but she is able to do that after the reinstatement order is issued, and that's a separate proceeding. It's separate from removal proceedings, and it's separate from the reinstatement proceeding. But she cannot, for example, now file a new asylum application because they would not have jurisdiction over the asylum application. This process for withholding. No, she can't because she now has a reinstatement order. Well, and the 2006 asylum application that she filed cannot be adjudicated either because USCIS also did not have jurisdiction over that application. That's why they didn't. I think it's also worth noting here that the application that was filed in 2006 was untimely because it was more than a year after her last reentry, which was in 1999. So pursuant to that, she's not eligible on the 2006 application for asylum but remains eligible for withholding and cash, which she's already eligible for under the reinstatement provision. Thank you. Thank you. I'll give you two minutes for rebuttal. Thank you, Your Honor. And this is probably my mistake in bringing up all the complexity of the underlying procedures. But I want to walk it back just a little bit. The asylum statute says, in very plain language, any alien physically present in the United States, irrespective of such alien status, can file for asylum and receive a merits adjudication. And in that merits adjudication, all of these issues can be worked out. Is it timely? Is it untimely? Does she have a well-founded fear? Was she persecuted in the past? Here's the difference between withholding and asylum. Asylum is a much more protective statute than withholding. Ms. Van Molt could have been deported ten times. She could be reinstated ten times. It doesn't matter. What is your response to the claim that she did file her asylum, but that because she didn't show up for the proceedings that were in the immigration court in which her asylum application was pending, that the proceeding was terminated? Her application was never pending before the immigration judge. Her application had only ever been pending before the then INS. It had never been submitted to the immigration judge. Why that is, the record is not sedated. What was it that she showed up for? She showed up for, so she, I don't know, before the immigration judge. There, as far as we can tell, the record is very sparse. We've not been able to locate parts of the record. Her attorney records were destroyed in a fire. But there appeared to have been two hearings, one sometime in February or March and a second one in June. It's unclear whether she appeared for any of those hearings or whether she knew whether or not those hearings existed. The government contends that she showed up for the first hearing and was given a two-week continuance and told if she didn't show up, school was out. Do you contest that? We do because I don't think the record actually demonstrates that. That may be so, but the record does not. I think the record can be read differently, where she may not have appeared at all at those hearings. I take it there's no document she signed that has her signature on it that says that. To the best of my knowledge, as I understand the record, that is correct. But, again, it wouldn't matter. It wouldn't matter if she didn't show up to that hearing at all, if she'd been ordered removed in absentia. And these interagency jurisdictional rules over who gets to hear the asylum claim, that doesn't matter either. They've got to figure it out because Congress said, irrespective of such alien status, it doesn't matter that she's been reinstated because that's what she finds herself right now. Did she ever go back and file a petition and say, I wasn't at either of these hearings? I received no notice. I have no idea what went on. She could file a motion to reopen. I'm not talking about future tense. I'm talking about did past tense. Oh, no, she did not. Okay. And she knew, well, you're saying that she self-deported by going out in 99. That's correct. But if she did that, she never went back to the immigration judge, never did anything. That's correct. And it doesn't matter. My time is over, but may I finish this thought? Yes. Thank you. It doesn't matter. She gets a merits adjudication of her asylum claim under the plain language of the statute. Once she's had a merits adjudication, if they deny it because it's not her. Well, you know, I mean, you can't mean that seriously because there's procedural bars to asylum that are not merits. So you can't read it in the way you're reading it, even if you're thinking not of your client but in general, right? No, I do mean that. And when I say a merits adjudication, I mean that some adjudicator is going to look at the grounds for ineligibility and eligibility that are contained in 1158. So 1158A says you have a right to asylum, and that right can be filed. So it doesn't matter when you file it or where. You can file it 25 years after your arrival, and you have a right to a hearing on the substance of your claim. Right. And that substance of the claim may be it's time barred, you know. So those are some ineligibility. They were just talking past each other as to what merits means. Right. And that 1158 sets forth who can get and who cannot get, and someone has to make that determination. Nobody's made that determination in this case. And I appreciate your patience with that. Can I ask just one question? Your position, in essence, is that if you apply for asylum, you can basically depart and enter the United States basically at will or with impunity? No. I mean, it's clearly going to matter to the merits of the claim, and entering the United States unlawfully, there's other consequences. But entering the United States unlawfully does not bar someone from getting asylum under the language of the statute. Thank you. Ms. Fredrickson, we have a little piece of paper here for supplemental citations, and I would appreciate it if you could provide the Court with a citation for the documents that you're referencing in the first-round proceedings for deportation so that we can look at the documents where the warnings were given and the appearance and that sort of thing. And the clerk will just provide you that piece of paper so that we can find those with a little more ease. Thank you very much. The case just argued is submitted.
judges: Whelan, Hawkins, McKeown